**SIGNED THIS: March 17, 2015**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 14-70700 |
| RICKEY L. EVANS, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

## O P I N I O N

Before the Court is the Chapter 13 Trustee's Motion to Dismiss with Prejudice. The Trustee complains that the Debtor acted in bad faith in filing this case and in proposing multiple unconfirmable Chapter 13 plans, and has also caused unreasonable delay which has been prejudicial to creditors. For the reasons set forth herein, the Trustee's Motion to Dismiss with Prejudice will be granted.

–1–

## I. Factual and Procedural Background

There are no material facts in dispute with respect to the Trustee's Motion to Dismiss. The parties have filed a Stipulation of Facts, and the other facts set forth herein are taken from the record and documents on file.

Rickey L. Evans ("Debtor") filed his voluntary petition under Chapter 13 on April 15, 2014. The Debtor filed only a bare bones petition and was ordered to file his schedules, Statement of Financial Affairs ("SOFA"), plan, and other required documents within fourteen days. The Debtor requested and received a short extension of that filing deadline and, on May 2, 2014, filed his schedules, SOFA, Chapter 13 Statement of Current Monthly and Disposable Income, and Chapter 13 Plan ("Plan"). In those documents, the Debtor represented that he was unmarried, had no dependents, earned wages from two employers, owned no business interests, and was not a party to any pending legal proceeding. Although the Debtor disclosed a deduction from his wages for a domestic support obligation on his Schedule I, he did not identify any domestic support creditors on his other schedules and did not provide for the payment of any domestic support obligations in his Plan. And although the Debtor listed a priority debt in the amount of $4293 owed to the Internal Revenue Service ("IRS") on his schedules, he made no provision for any payment to the IRS in his Plan.

The Trustee conducted the meeting of creditors on June 19, 2014. During the meeting, the Debtor admitted that at the time of filing he was a party to a pending dissolution of marriage action and that a final judgment had been entered

in the dissolution case in May. He also acknowledged that just a few days before filing, he borrowed money from one of his employers but he had not scheduled the employer as a creditor. The Trustee docketed a confirmation report stating that the Debtor had been instructed to provide the Trustee with information on his domestic support obligations and to file an amended SOFA and an amended Schedule F.

The Debtor's Plan provided for thirty-six monthly payments to the Trustee totaling approximately $11,000. From those sums, the Trustee was directed to pay his own commissions, the Debtor's attorney fees, and an arrearage on a vehicle loan. Any remaining funds were to be distributed *pro rata* to unsecured creditors. The Plan drew objections from two creditors. The IRS objected to the Plan, noting that it had filed a priority claim in the amount of $10,272.79 but there was no provision in the Plan for payment of the priority claim. JPMC Specialty Mortgage LLC filed an objection complaining that an arrearage amount due to it was not provided for in the Plan.

At the hearing on confirmation of the Plan, the Debtor's attorney stated that the Debtor intended to file an amended plan providing for payment of the full amount claimed as a priority by the IRS and surrendering the property subject to the JPMC Specialty Mortgage LLC lien because that property had been awarded to his ex-wife in the dissolution proceedings. The Trustee noted that the Debtor's employer from whom he had borrowed money had never been scheduled as a creditor and that the claims bar date was approaching. The Debtor's attorney

–3–

replied that he intended to file an amended schedule adding the employer but that the employer had already set off the debt and repaid itself, so he did not believe a claim would be filed. The Debtor's attorney was instructed that the employer had to be scheduled, and he was admonished to file the required amendments promptly. The Debtor was also granted time to file an amended plan.

The Debtor filed his First Amended Plan ("Amended Plan") on August 21, 2014. The Amended Plan provided for payments to the Trustee over a sixty-month term which totaled approximately $25,000. The Debtor noted in the Plan that if his estate were liquidated under Chapter 7, a little over $10,000 would be available to be distributed on unsecured claims. The Amended Plan also provided for full payment of the IRS priority claim and for surrender of the Debtor's residence to the secured mortgage lender. The Amended Plan did not provide for the payment of any domestic support obligations. The Debtor did not file any amended schedules or an amended SOFA in support of confirmation of his Amended Plan.

The Trustee objected to confirmation of the Amended Plan. He complained that the Debtor's employer still had not been added as a creditor and that the claims bar date was scheduled to run in mid-September. He also complained that the Debtor was not technically employed by the entity that had lent him money. Rather, the Debtor was an independent contractor and should have disclosed ownership of a business on his schedules and SOFA. The Trustee also questioned why the Debtor had gone forward with the dissolution of marriage case in state

–4–

court in apparent violation of the automatic stay and why he had not yet provided the Trustee with a copy of the state court judgment. The Trustee asserted that the Debtor apparently had been ordered to transfer his residence in which there appeared to be equity to his ex-wife and requested valuation information regarding that property. The Trustee also noted that the Debtor had not disclosed ownership of any wearing apparel on his schedules and, even though such items frequently are of little value, he asserted that the mistake should be corrected. The Trustee asked that confirmation of the Amended Plan be denied and requested that the Debtor file the amended SOFA and amended schedules discussed at the June creditors meeting.

On September 30, 2015, almost two weeks after the claims bar date had run, the Debtor filed an Amended Schedule F adding a creditor, Lock Stock, for a debt described as an "employee advance" of $1600 incurred in March 2014. The Debtor's attorney was notified that he was required to file a certificate of service for the Amended Schedule F and was given fourteen days to do so. The certificate of service was never filed, however, and the Amended Schedule F was subsequently stricken.

Along with the Amended Schedule F, the Debtor filed a Second Amended Chapter 13 Plan ("Second Amended Plan"). The Second Amended Plan increased the Debtor's payments into the Plan to an aggregate of approximately $27,400. The Second Amended Plan added a provision for the payment of a $2038 domestic support obligation to the Illinois Department of Healthcare and Family

Services/MRU ("IDHFS"). The IDHFS had never been scheduled as a creditor by the Debtor but had filed a priority claim for the same amount prior to the bar date. The IDHFS claim stated that it was related to child support due from the Debtor to "Anita Fuller" and included as an attachment a 1989 court order for child support the Debtor was ordered to pay to "Anita Currie." Neither Anita Fuller nor Anita Currie had been scheduled by the Debtor as a creditor. In most other respects, the Second Amended Plan was similar to the Amended Plan.

The Trustee objected to the Second Amended Plan for many of the same reasons he had objected to the Amended Plan. The Debtor still had not properly scheduled the debt to Lock Stock and had not filed an amended SOFA clarifying his relationship to Lock Stock as an independent contractor rather than an employee. The Trustee also complained that the Debtor had neither provided a copy of the judgment entered in his dissolution case more than five months prior, nor otherwise answered the Trustee's questions regarding the disposition of property in the dissolution of marriage case. The Trustee claimed that the repeated failures of the Debtor to provide information and to amend faulty documents evidenced bad faith on the part of the Debtor.

At a hearing on confirmation of the Second Amended Plan, the Debtor's attorney suggested that the only real issue related to confirmation was whether the Debtor violated the automatic stay in proceeding with his dissolution of marriage case in state court after filing this case. The attorney argued that it was too late to fix the problem now as the dissolution had occurred more than six

months earlier. And the attorney asserted that there may not have been a stay violation in the first place because the dissolution was granted on the Debtor's counter-petition rather than on his ex-wife's original petition. The Trustee countered that the Debtor had not produced a copy of the judgment for dissolution of marriage despite repeated requests and promises. Accordingly, the attorney's representations about the terms of the judgment could not be verified. The Trustee also recited a litany of problems with the case including the need for an amended SOFA and amended schedules which had been promised by the Debtor for more than six months. At the conclusion of the hearing, confirmation of the Second Amended Plan was denied and the Debtor was given time to file another plan.

The Debtor filed his Third Amended Chapter 13 Plan ("Third Amended Plan") on December 11, 2014. The Third Amended Plan made no changes from the Second Amended Plan with respect to the amounts the Debtor was paying in to the Trustee or the amounts the Trustee was directed to pay out to creditors. The only change was the addition of a narrative in the special terms section. With respect to the issues involving his failure to schedule Lock Stock as a creditor, the Debtor stated: "The debt to contract employer Lock Stock was paid post-petition by setoff and the Debtor does not believe that he has a right to recover those funds." With respect to the issues regarding his dissolution of marriage, the Debtor acknowledged that he or his ex-wife should have moved for stay relief but also claimed that "the facts here do not suggest that a different result would have

–7–

occurred if the stay had been lifted." He stated that all property that might be liquidated if his case had been filed under Chapter 7 had been accounted for and no non-exempt property had been transferred in the dissolution. He alleged that the value of the residence transferred to his ex-wife was $62,607 rather than the $87,000 he had scheduled originally. And he agreed to provide the Trustee with a copy of his "divorce decree" within "14 days" although he did not clarify when that "14-day" period would begin to run. The Debtor did not file any amended schedules or an amended SOFA with his Third Amended Plan.

The Trustee filed an objection to confirmation of the Third Amended Plan. The Trustee's objection mirrored prior objections and raised the same issues related to the Debtor's continuing failure to provide a copy of his judgment for dissolution and his failure to file amended schedules and an amended SOFA. The Trustee asserted that the case had been pending for eight months and that all of the issues raised in his objection had been discussed with the Debtor at the June creditors meeting. He argued that the Court should find that neither the Third Amended Plan nor the original petition were filed by the Debtor in good faith. After a brief initial hearing, confirmation of the Third Amended Plan was set for an evidentiary hearing in February 2015.

The Trustee then filed his Motion to Dismiss with Prejudice ("Motion to Dismiss"). In the Motion to Dismiss, the Trustee noted the Debtor's failure to schedule Lock Stock as a creditor and his apparent acquiescence in Lock Stock's post-petition collection of its debt by setoff. He also repeated his many concerns

related to the Debtor's post-petition dissolution of marriage. The Trustee acknowledged that on January 28, 2015, he had finally received a copy of the judgment for dissolution but complained that he was still waiting for valuation information about the Debtor's residence that had been transferred to his ex-wife. The Trustee also noted that the Debtor had moved from the residence after the dissolution but had never reported his change of address to the Court. The Trustee complained that the Debtor's failure to schedule any wearing apparel had not been corrected. And the Debtor had never properly scheduled his domestic support obligations or the creditors to whom the obligations were owed. The Trustee argued that taken as a whole, the Debtor's conduct in this case constituted bad faith and had caused unreasonable delay. The Trustee asked that the case be dismissed with a one-year bar to refiling. The Motion to Dismiss was set for evidentiary hearing along with the Third Amended Plan.

Several hours before the scheduled evidentiary hearing, the Debtor and the Trustee filed their joint Stipulation of Facts. The Debtor also filed an Amended Schedule A reducing the value of the residence conveyed to his ex-wife from the previously reported amount of $87,000 to $63,000. An Amended SOFA was filed at the same time adding information about the dissolution of marriage case and the Debtor's self-employment. A change of address was also docketed on behalf of the Debtor.

At the hearing, both parties relied on the Stipulation of Facts and neither offered any additional testimonial or documentary evidence. The Trustee stood on

the allegations and arguments in his Motion to Dismiss and his repeated objections to the several plans offered by the Debtor. The Debtor's attorney offered to have his fees reduced or denied completely as a sanction for the many problems in the case. Alternatively, he suggested that the case be dismissed without a bar to refiling. He acknowledged that he should have been more assertive with his client and could have done a better job in providing requested documentation in a timely fashion. But he offered no actual explanation for why necessary amendments had not been timely filed or why it had taken more than seven months just to provide the Trustee with a copy of the Debtor's judgment for dissolution of marriage. The Trustee's Motion to Dismiss was taken under advisement at the conclusion of the hearing.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. The issues before the Court related to administration of the estate and plan confirmation are core proceedings. 28 U.S.C. §157(b)(2)(A), (L).

## III. Legal Analysis

The Trustee asks that this case be dismissed with prejudice because of the Debtor's unreasonable delay and lack of good faith. A court may dismiss or convert a Chapter 13 case for cause including "unreasonable delay by the debtor that is prejudicial to creditors[.]" 11 U.S.C. §1307(c)(1). Although not specifically

identified by statute, cause for dismissal or conversion also includes the lack of good faith. *In re Smith*, 848 F.2d 813, 816 n.3 (7th Cir. 1988); *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992). When cause exists, the determination of whether to dismiss or convert is based on the "best interests of creditors and the estate[.]" 11 U.S.C. §1307(c).

Unreasonable delay occurs when a debtor has failed to take the necessary actions to obtain plan confirmation or to comply with the terms of their own confirmed plan. Debtors who fail to timely file tax returns, properly address issues with secured creditors, properly schedule assets or complete other required paperwork, or make the necessary effort to market property which must be sold may have their cases dismissed or converted for unreasonable delay. *See, e.g.*, *Howard v. Lexington Investments, Inc.*, 284 F.3d 320, 323-24 (1st Cir. 2002); *In re Blaise*, 219 B.R. 946, 950 (B.A.P. 2d Cir. 1998); *Dempsey v. Carter (In re Dempsey)*, 2006 WL 3590191, at *8 (S.D. Ind. Dec. 8, 2006), *aff'd*, 247 F. App'x 21 (7th Cir. 2007). Creditors are prejudiced when debtors obtain the protection of the automatic stay and then fail to promptly obtain confirmation and make payments to creditors as required. Delay is unreasonable when debtors have been given sufficient time to act but have made no effort to do so or cannot explain why they have been unable to fulfill their obligations within the time allotted.

Good faith — or the lack thereof — is determined by a totality of the circumstances analysis. *Love*, 957 F.2d at 1356. In making the analysis, courts are required to consider the circumstances of the case and determine whether

there has been an abuse of the provisions, purpose, or spirit of the Bankruptcy Code. *Smith*, 848 F.2d at 818. A determination of a debtor's good faith for purposes of §1307(c) is not unlike that made under the confirmation provisions of §1325(a) requiring that both a Chapter 13 plan and petition be filed in good faith. 11 U.S.C. §1325(a)(3), (7); *Love*, 957 F.2d at 1357. The focus of a good faith analysis is fundamental fairness, and one key inquiry must be "whether a debtor has been forthcoming with the bankruptcy court and the creditors." *Love*, 957 F.2d at 1357; *In re Jongsma*, 402 B.R. 858, 873 (Bankr. N.D. Ind. 2009).

### A. The Debtor's conduct related to Lock Stock evidences his lack of good faith and constituted unreasonable delay.

The Debtor works for Lock Stock providing janitorial services on an independent contractor basis. The Debtor reported his business income on tax returns for the last four years which he provided to the Trustee, and he disclosed the income from Lock Stock on his SOFA along with his wages from another employer. But he also stated on his SOFA that he had no ownership interest in any business. The parties acknowledge that the Debtor's duty to provide correct information about his relationship with Lock Stock was discussed at the June 2014 creditors meeting, and the record discloses that the Trustee has repeatedly asked for a corrected SOFA. The Debtor, however, did not file the amended SOFA until the day of the hearing on the Motion to Dismiss. On the amended SOFA, the Debtor answered the request for the "beginning and ending dates" of the business by stating "ongoing" and replied to the question about who was in possession of

the books and records of the Debtor by checking the "None" box. The Debtor then failed to provide an explanation of why no books and records were available despite the specific request for that information at question 19c of the SOFA.

The Debtor does not appear to be particularly concerned about his omission of accurate information about his relationship with Lock Stock in his documents. His attorney says that the Debtor had pay advices from Lock Stock which were given to the Trustee along with his tax returns. Thus, the Debtor's position seems to be that, because the Trustee had all the information needed to calculate disposable income, cleaning up the mistakes on the original SOFA was unnecessary. But the Debtor's cavalier attitude about providing precise business information is seriously misguided.

When a Chapter 13 debtor is engaged in business, both the Trustee and the debtor have additional duties and responsibilities. *See* 11 U.S.C. §§1302(c), 1304(c). Without detailed information about the Debtor's business, the Trustee cannot determine whether the Debtor is actually engaged in business as defined by the Code and whether the additional duties have been imposed. The Debtor's failure to provide accurate and complete information in his original SOFA and his failure to timely amend the SOFA caused unreasonable delay. His half-hearted effort to make amendments, reflected in the amended SOFA filed just a few hours before the hearing, does not remedy the problem. The Debtor offered no good reason for his failure to provide correct and timely information and, accordingly, has provided no defense to the Trustee's strong evidence of unreasonable delay.

More problematic for the Debtor, however, is his intentional exclusion of Lock Stock from his creditor schedules. The Debtor now stipulates that he borrowed money from Lock Stock on April 12, 2014, just three days before filing this case. But he did not list Lock Stock as a creditor and makes no claim that the omission was anything other than intentional. After repeated demands by the Trustee, the Debtor filed an Amended Schedule F which listed Lock Stock and disclosed that $1600 was borrowed in March 2014. The Debtor did not serve Lock Stock with notice of the amendment and refused to do so after being instructed by the Clerk that service was required by the Rules. *See* Fed. R. Bankr. P. 1009(b).

Debtors do not have the option of picking and choosing which creditors to include and which to exclude from their bankruptcy case. See 11 U.S.C. §521(a)(1); Fed. R. Bankr. P. 1007(b)(1); *In re Bergae*, 2014 WL 1419586, at *6 (Bankr. C.D. Ill. Apr. 11, 2014). "A bankruptcy proceeding can't be concluded without knowledge of who the debtor's creditors are, unless omitting them would be immaterial, which it would be only if the amount owed them was utterly trivial." *In re Katsman*, 771 F.3d 1048, 1051 (7th Cir. 2014) (citations omitted) (denying Chapter 7 discharge due to failure to schedule all creditors). Here, the amount owed to Lock Stock was not trivial, and the fact that the amount was borrowed and apparently spent in the days before this case was filed was not immaterial.

The Debtor's wrongful conduct in not scheduling Lock Stock was aggravated by the Debtor's acquiescence in Lock Stock setting off the amounts owed to it. By

reason of the setoff, Lock Stock was paid in full while the Debtor's other creditors await partial payment. Actions to set off pre-petition debts are subject to the automatic stay, and Lock Stock violated the stay when it paid itself from monies otherwise due to the Debtor without first obtaining stay relief. 11 U.S.C. §362(a)(7); *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995). But the fault here lies with the Debtor, not Lock Stock. Lock Stock never received notice of the case filing or the automatic stay because the Debtor affirmatively chose not to give Lock Stock notice. By not notifying Lock Stock of the filing or protesting the setoff, the Debtor facilitated the payment of a creditor he wanted to favor. Such conduct evidences bad faith.

Lying on schedules or other bankruptcy documents about assets or debts for the purpose of providing either an advantage or a disadvantage to a particular creditor is evidence of a lack of good faith. *See Love*, 957 F.2d at 1357. The Debtor obviously had reason not to list Lock Stock in that he did not want to jeopardize his income-producing relationship with Lock Stock. Likewise, he had reason to cooperate with Lock Stock in setting off the amounts due even though the setoff violated the automatic stay. But those same reasons provide evidence of a lack of good faith on the part of the Debtor. The Debtor lied on his schedules in order to prefer a favored creditor and has repeatedly refused to correct the error. He now says in his Third Amended Plan that he does not believe there is anything he can do about the issue. More accurately, there is nothing he wants to do or intends to do about the issue. The Debtor acted in bad faith by lying on his schedules and

facilitating the payment of a creditor in violation of the automatic stay. His conduct as it relates to Lock Stock constitutes grounds for the dismissal of his case with prejudice.

### B. The Debtor's conduct with respect to his post-petition dissolution of marriage caused unreasonable delay.

The automatic stay prohibits the continuation of judicial proceedings that were commenced pre-petition to recover claims against a debtor or to obtain possession of or control over property of the estate. 11 U.S.C. §362(a)(1), (3). Excepted from the automatic stay are actions to dissolve a marriage, except to the extent property division is involved, and actions to establish and collect domestic support obligations. 11 U.S.C. §362(b)(2)(A)-(C).

When the Debtor filed this case, an action commenced by his now-ex-wife to dissolve their marriage was pending. Nevertheless, the Debtor reported on his SOFA that he was not a party to any pending lawsuit and had not been a party to any suit within the one year prior to filing. And notwithstanding the automatic stay, the Debtor participated in finalizing his dissolution of marriage including a division of property shortly after filing this case. The Trustee has repeatedly complained about the Debtor's action in finalizing a property division that resulted in the Debtor's residence being transferred to the ex-wife without any notice to the Trustee or creditors and without either party asking for stay relief. The Debtor admits in his Third Amended Plan that stay relief should have been requested but shrugs off the problem by suggesting, without any apparent basis, that "the facts

here do not suggest that a different result would have occurred if the stay had been lifted." But again the Debtor's cavalier attitude is seriously misguided.

The Debtor had a duty to provide accurate information regarding his assets, liabilities, and financial affairs and a duty to cooperate with the Trustee. 11 U.S.C. §521(a)(1), (3). Regardless of the constraints of the automatic stay, proceeding with the dissolution of marriage impacted the Debtor's income, expenses, and assets. At a minimum, the Trustee was entitled to a copy of the judgment entered in the dissolution case, and the Debtor does not argue otherwise. But the judgment was entered in May 2014 and not provided to the Trustee until January 28, 2015. And the parties have stipulated that additional documents referred to in the judgment were not provided to the Trustee until February 20, 2015. The Trustee requested a copy of the judgment repeatedly and the Debtor has offered no reason or even an excuse for not providing the judgment in a timely fashion. The Trustee could not fully perform his duties related to plan confirmation until he had complete information from the Debtor. Thus, month after month passed with little or no progress made in this case due in large measure to the Debtor's failure to provide a document which he most certainly had in hand or could have otherwise provided promptly if he had been inclined to do so. The Debtor's failure to timely provide a copy of his judgment for dissolution of marriage to the Trustee resulted in unreasonable delay in the progress of this case and forms a basis for dismissal of this case.

*C. This case must be dismissed with a one-year bar to refiling.*

The Debtor's conduct as it relates to Lock Stock and his post-petition dissolution of marriage is sufficient to support dismissing this case with prejudice and with a one-year bar to refiling. But the Debtor's wrongful conduct with respect to several other matters also bears mentioning.

The Debtor failed to schedule ownership of any clothing or personal effects even though he does not deny owning such items. Despite repeated demands by the Trustee, the Debtor has made no effort at all to remedy this mistake. As the Trustee acknowledges, there is rarely much value in a debtor's clothing and personal effects. And in Illinois, a broad exemption exists which covers all "necessary wearing apparel" and other family items without regard to value. *See* 735 ILCS 5/12-1001(a). But that does not excuse the Debtor's specific denial on his schedules that he has any clothing or personal items. The Debtor's repeated failure to make the simple amendment necessary to correct his initial misstatement is further evidence of his lack of good faith.

The Debtor has also failed to schedule his domestic support creditors. The IDHFS apparently received actual notice of the case filing in time to file a claim despite not being scheduled. But the Debtor also has stipulated that he owed a child support arrearage to "Anita Fuller (a.k.a. Anita Currie)" at the time of filing, and she has never been scheduled as a creditor. Perhaps the Debtor believes that because he provided the Trustee with information about his domestic support obligations he did not need to schedule her as a creditor, but that assumption is

faulty. The Debtor was required to schedule all of his creditors. 11 U.S.C. §521(a)(1)(A), (B)(i); *Bergae*, 2014 WL 1419586, at *6. Again, his failure to make any effort whatsoever to fix this mistake is evidence of his lack of good faith.

According to the Trustee, he was notified of a change of address for the Debtor in September 2014. But the Debtor did not file a change of address notice with the Clerk until the morning of the hearing on the Motion to Dismiss. All of the notices issued by the Clerk during that period of time were sent to the Debtor's prior residence which is now occupied by the Debtor's ex-wife. Regardless of whether the ex-wife passed on the notices or threw them away, the Debtor had to know that he was no longer receiving notices directly from the Clerk. Apparently, however, he simply did not care enough about what was going on in his case to request his attorney to file a change of address with the Clerk. Although the Court cannot say that this failure, in and of itself, is evidence of bad faith, the Debtor's lack of concern about receiving timely notices in his case certainly supports the Court's finding that the more serious failures in the case are evidence of bad faith.

When the Debtor requested an extension of time early in the case to file missing documents, he stated that the case had been initially filed on an emergency basis to avoid repossession of a vehicle. His several plans have all provided for the payment of an arrearage on a vehicle loan. Thus, the Debtor has apparently achieved his main goal in filing — to save his vehicle. But to obtain the benefits of a bankruptcy filing, a debtor has responsibilities and duties to perform,

including cooperation with the Trustee. 11 U.S.C. §521(a); *Olsen v. Reese (In re Reese)*, 203 B.R. 425, 432 (Bankr. N.D. Ill. 1997). It is obvious from the evidence in the record that the Debtor never fully intended to perform his duties in this case. He decided from the outset not to disclose all of his creditors, and he compounded that mistake by facilitating payment of one creditor in violation of the stay and by failing to provide necessary documents to the Trustee. His conduct has been prejudicial to creditors who, with the exception of Lock Stock, have not received a penny for over eight months.

The Debtor's attorney has offered to reduce his fee if the case is not dismissed. Although the attorney's candor and acceptance of responsibility is appreciated, that sanction alone is not sufficient to address what occurred here. Significant delay was caused by the attorney's procrastination, but the Debtor was complicit in the delays and, more importantly, made the decision not to list Lock Stock as a creditor. The Debtor's conduct can only be properly addressed by dismissal with a bar to refiling. Conversion has not been requested and would provide no benefit to general unsecured creditors. It is unlikely that a Chapter 7 trustee could pay the priority IRS and IDHFS claims in full from the Debtor's non-exempt property and thus would pay nothing on general unsecured claims. Dismissal with a bar to refiling is the better remedy here.

In making this decision, the Court is cognizant of the many real challenges involved in representing Chapter 13 debtors and bringing Chapter 13 plans to confirmation. Debtors lose or change employment frequently; family members

move in and out of the household. Collecting all required information is difficult. But the problems here were not caused by matters beyond the Debtor's control. The Debtor knew on the day he filed this case and on the day he filed his schedules and SOFA that he was married and a party to a pending dissolution of marriage action, had domestic support obligations, operated his own janitorial business, had recently borrowed money from Lock Stock, and owned clothing and personal effects. And he knew on the date of the creditors meeting that his dissolution had been finalized and a judgment had been entered. Yet he affirmatively misrepresented information about every one of these issues on his original documents, and he has never fully corrected the errors.

The unfortunate result here was not caused by the failure of the Debtor to meet the challenges faced by all debtors but rather by his own decision not to schedule all of his creditors and not to fully cooperate in his own case. The dismissal of this case with a one-year bar to refiling is compelled by the Debtor's own lack of good faith and unreasonable delay. *See Dempsey*, 247 F. App'x at 25 (one-year bar to refiling appropriate after unreasonable delay even in the absence of bad faith finding).

## IV. Conclusion

The Trustee has met his burden of proof that this case should be dismissed with prejudice. The Debtor acted in bad faith in failing to schedule Lock Stock as a creditor, in facilitating payment to Lock Stock in violation of the stay, and in

failing to correct serious mistakes in his schedules and SOFA. The Debtor also caused unreasonable delay in this case by failing to timely file amended schedules and an amended SOFA and by failing to provide the Trustee with a copy of his judgment for dissolution of marriage for more that seven months after the judgment was entered. The serious nature of the Debtor's conduct requires that the dismissal include a one-year bar to refiling.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###